CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 19 2017

JULIA C. DUDLEY, CLERK
BY: HMcDonan
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **KEITH LAMONTE HILL,** | ) | **CASE NO. 7:16CV00514** |
| | ) | |
| Petitioner, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | **By: Hon. Jackson L. Kiser** |
| | ) | **Senior United States District Judge** |
| Respondent. | ) | |

Keith Lamonte Hill, a Virginia inmate proceeding pro se, timely filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of Hill's confinement on a judgment in Campbell County Circuit Court. Respondent filed a motion to dismiss, and Hill failed to respond, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss and dismiss the petition.

## I.    Background

A Campbell County jury convicted Hill of burglary, grand larceny, conspiracy, destruction of property, and possession of burglary tools. The circuit court sentenced him to a sixty-one year prison term.

In Hill's related Franklin County habeas petition, I established the following facts:

> On the morning of July 5, 2010, Rocky Mount Food Lion employees arrived at work to discover that a break-in had occurred overnight. A burglar had cut an entry-hole into the back wall, and the thief had stolen $5,692 of cigarettes. The store surveillance cameras captured a male who fit Hill's description inside the store, holding a bag, and going to various cigarette dispensing locations. Employees called the local police, who began investigating.
>
> On the morning of August 1, 2010, the owner of the Lucky 2 Mart, located in the southern part of Franklin County, discovered that someone had cut an entry-hole into the back wall of his store and absconded with $18,000 of cigarettes. Unfortunately, the surveillance cameras and motion detectors were not functioning.[1] Again, local police began investigating.

---

[1] The record is unclear on whether the motion detectors were disabled, or broken.

On August 8, 2010, Lt. Mandeville of the Botetourt County Sheriff's Department responded to a call from 604 Minute Market regarding a break-in attempt. Preliminary investigation did not reveal any suspects,[2] but around this time, Botetourt County officers discovered that similar burglaries, with the same *modus operandi*[3] had occurred in Campbell County, Franklin County, and the City of Lynchburg. A multi-jurisdictional, cooperative investigation began.

On September 4, 2010, Botetourt County Deputy Bruce stopped a suspicious vehicle in the Greenway Market parking lot, long after the store had closed. Hours later, Greenway Market employees reported a suspicious man that claimed to be from the store's security provider, but the individual left before Greenway Market employees phoned police.[4]

On September 9, 2010, Lt. Mandeville obtained surveillance footage from the 604 Minute Market[5] and Greenway Market. In the Greenway Market surveillance tape, the suspicious man, who claimed to be from the store's security provider, placed tape over security motion sensors. Lt. Mandeville strongly suspected that the videos from the two stores showed the same individual: a black male matching Hill's description.

On September 10, 2010, Deputy Bruce informed Lt. Mandeville about the suspicious vehicle in the Greenway Market parking lot, and thereafter Lt. Mandeville obtained the license and DMV information on the two black males that Deputy Bruce had stopped on the morning of September 4, 2010. Lt. Mandeville then compared the DMV photos with the surveillance footage; Lt. Mandeville believed that one of the black males from the parking lot stop, Hill, was the same black male who appeared in the 604 Minute Market and Greenway Market surveillance videos.

After additional DMV searches, Lt. Mandeville discovered Hill's Bedford address and his ownership of a 2003 Chevrolet. Lt. Mandeville consulted with the Commonwealth's Attorney about attaching a GPS device to Hill's vehicle, and the Commonwealth's Attorney advised that a search warrant was unnecessary. The controlling precedent at the time, Foltz v. Commonwealth, 698 S.E.2d 281 (Va. Ct. App. 2010), stated that the placement of a GPS unit on a vehicle did not constitute a search or seizure. Lt. Mandeville directed Botetourt

---

[2] The cases in Franklin County went cold during the summer of 2010.

[3] The burglar appeared to "case" his break-ins, cut an entry-hole in the rear of stores in the early hours of the morning, and exclusively stole cigarettes.

[4] Employees filed a report with Botetourt police after the man left the store.

[5] The 604 Minute Market surveillance footage was from August 1, 2010. The video was obtained by Botetourt officers after Minute Market employees heard about the suspicious events at Greenway Market, and then remembered a similarly suspicious event at their store in early August. The surveillance videotape showed a man who "'appeared to be casing [the Minute Market]' . . . 'messing around' by the back wall of the store near the part of the wall where the attempted break-in occurred a week later." Hill v. Commonwealth, 2012 WL 4773583, 2012 Va. App. LEXIS 318, at *12 (Va. Ct. App. 2012).

Deputy Dillow to place a GPS on Hill's vehicle.[6] On September 16, 2010, Deputy Dillow traveled to the city of Bedford, located the Chevrolet outside of Hill's home, and attached the GPS unit onto the undercarriage of Hill's vehicle at approximately 4:30 A.M. The GPS device remained attached to Hill's vehicle until September 27, 2010.

On or about September 21, 2010, Lt. Mandeville met with Campbell County Investigator Tracy Emerson to review Botetourt County surveillance videos, because Emerson suspected that Hill was the culprit for similar Campbell County break-ins. Investigators initially could not connect any getaway vehicles to Hill; however, Emerson discovered that Hill had rented a silver or gray Chevrolet HHR from a car rental company several times in months prior, and a similar vehicle appeared in some of the surveillance tapes.

On the morning of September 27, 2010, a Campbell County Food Lion reported a break-in where an entry-hole had been cut into the back wall of the store, and cigarettes had been stolen.[7] Emerson called Lt. Mandeville, who shared GPS data showing that Hill's vehicle had been in the Food Lion parking lot for over an hour earlier that morning. Investigators worked on obtaining search warrants for Hill's vehicle and home. Later that day, Campbell County officers contacted the Bedford Police Department to set up surveillance of Hill's vehicle and coordinate an arrest. Bedford officers then followed Hill and associate Troy Blake when they left Hill's house. Police found stolen cigarettes when they stopped the vehicle, including cartons in the back seat of the vehicle poorly concealed by bedding, and officers took Hill and Blake into custody. After officers advised them of their Miranda rights, Blake gave a full statement implicating both Hill and himself in the Franklin County burglaries, and Hill also admitted involvement in the Franklin County crimes.

Hill v. Clarke, No. 7:15CV00201, 2016 WL 7031803, 2016 U.S. Dist. LEXIS 165655, at *1-6 (W.D. Va. Dec. 1, 2016).

After the Campbell County Circuit Court's sentencing, Hill noted an appeal to the Court of Appeals of Virginia. However, before filing his appellate brief, Hill filed a pro se petition for a writ of habeas corpus in the circuit court, asserting that evidence derived from the GPS should have been excluded. The circuit court denied the habeas petition, and Hill did not appeal the dismissal.

---

[6] The record shows that no warrant was obtained for the GPS attachment, and that no exigent circumstances existed at the time.

[7] Before the break-in report, "[l]aw enforcement authorities from six jurisdictions scheduled a meeting for September 27, 2010, to discuss the related cases." Hill v. Commonwealth, No. 1541-12-3, at 2 (Va. Cir. Ct. Oct. 29, 2013).

Next, Hill pursued direct appeals, but both the Court of Appeals of Virginia and the Supreme Court of Virginia denied his petitions.[8] Hill sought further review, but the United States Supreme Court denied his petition for a writ of <u>certiorari</u>. Lastly, Hill filed a state habeas petition in the Supreme Court of Virginia, raising fourteen claims; the court denied his petition.

## II.     Current Claims

In his current petition, Hill asserts the following fourteen claims.

### A. Substantive Claims

1. Hill's detention is unlawful under the Fourth Amendment and Article I, § 10[9] of the Constitution in light of <u>United States v. Jones</u>, 565 U.S. 400 (2012), given the warrantless installation of a GPS device on his private vehicle by law enforcement to gather information. The Botetourt officers were required to secure a warrant or court order, but did neither. The government cannot rely on the good faith exception to the warrant requirement because the officers were not engaged in the lawful performance of their official duties. They were acting unlawfully, outside their statutory jurisdiction. Also, the Court of Appeals of Virginia did not rely on the good faith exception in its opinion;

2. The Botetourt County officers' conduct in placing the GPS on the car was unlawful and violated Hill's due process rights under the Fourth and Fourteenth Amendments. The officers' conduct was outrageous when they

---

[8] While his direct appeal was pending, Hill also sought preliminary and permanent injunctions in the circuit court; both were denied in March and May of 2013. The Supreme Court of Virginia later dismissed Hill's appeal of the injunction denial on August 19, 2013.

[9] Article I, § 10 of the Constitution prohibits the states from exercising certain powers, including bills of attainder and ex post facto laws.

tampered with his vehicle, engaged in criminal conspiracy, and computer crimes;

3. Hill's detention is unlawful under the Fourth and Fourteenth Amendments because the Botetourt County sheriff's deputies acted outside their statutory jurisdiction and therefore violated the "color of office doctrine." Pursuant to that doctrine, police acting outside their jurisdiction, but not in fresh pursuit, may not utilize the power of their office to gather evidence or ferret out criminal activity not otherwise observable;

4. Hill's detention is unlawful under the Fourth and Fourteenth Amendments because his stop and arrest in the City of Bedford related back to constitutional violations initiated on September 16, 2010, the date that the Botetourt officers attached the GPS device to Hill's car. His arrest was a continuation of the constitutional violations set in motion on September 16, 2010. Also, the Commonwealth did not argue that the officers had probable cause to arrest Hill; instead, the Court of Appeals injected that conclusion in its non-binding, per curiam order;

5. Hill's detention is unlawful under the Sixth Amendment because the trial court denied him the right to call for evidence from a material witness, Joel Branscom, the Commonwealth's Attorney for Botetourt County. Hill sought testimony from Branscom, a "witness" to the criminal and unconstitutional acts of the deputies. Hill thus requires an evidentiary hearing to resolve the claim;

6. Hill's detention is unlawful under the Fourteenth Amendment because the August 22, 2011 Campbell County Circuit Court order was void, such that there was no need to preserve the issue on appeal. Void orders can be challenged at any time. The trial judge knew of the violations committed by the Botetourt officers. Because the order is void, by virtue of the Jones opinion, the trial court's ruling is inconsistent with due process; and

7. Hill's detention is unlawful under the Fourth and Fourteenth Amendments because, absent the GPS data, a jury might not have inferred that Hill was involved in the Food Lion break-in. No one saw Hill break into the Food Lion. The evidence linking Hill to the Food Lion crimes was not strong, let alone overwhelming. The GPS data was essential and the trial court erred in admitting it.

## B. *Ineffective Assistance of Counsel Claims*[10]

A. Appellate counsel failed to challenge the search in the state appellate courts based on a reasonable expectation of privacy as stated in Katz v. United States, 389 U.S. 347 (1967), State v. Zahn, 2012 S.D. 19, 2012 WL 862707 (D.S.D. 2012), United States v. Maynard, 615 F.3d 544 (D.C. Cir. 2010), and other cases. Counsel failed to adequately pursue an argument based on outrageous police conduct;

B. Appellate counsel failed to argue, as directed by Hill, that Hill's Fourteenth Amendment rights "under the doctrine of fundamental fairness mandated by the due process clause" had been violated by the Botetourt officers, who

---

[10] In his petition, Hill listed his ineffective assistance claims as 1a, 2b, 3c, 4d, 5e, 6f, and 7g. I have ordered the claims according to their associated letter for clarity and distinction from his substantive claims.

committed multiple criminal acts against Hill during the course of their illegal investigation. Under that doctrine, outrageous government conduct has warranted dismissal of indictments;

C. Appellate counsel, despite express instructions from Hill, failed to argue that Hill's Fourth and Fourteenth Amendment rights had been infringed by violation of the "under color of office doctrine" by Botetourt County officials. Counsel failed to press the physical trespass and reasonable expectation of privacy arguments, as well as outrageous government conduct. Counsel failed to press arguments that Hill's arrest was illegal, and fruit of the illegal arrest should have been suppressed;

D. Appellate counsel failed to argue in the Court of Appeals and the Supreme Court of Virginia that, absent the Court of Appeals' resort to the independent source doctrine, no probable cause existed for the Bedford Police to stop and arrest Hill in Bedford on September 27, 2010. The independent source doctrine was injected into the case by the Court of Appeals of Virginia;

E. Appellate counsel failed to argue that the trial court erred in quashing Hill's subpoena request for Commonwealth's Attorney Joel Branscom;

F. Appellate counsel failed to argue in the Court of Appeals and the Supreme Court of Virginia that the trial court's admission of evidence obtained by use of the GPS device was not harmless error. The standard for harmless error would have been harmless beyond a reasonable doubt; and

G. Appellate counsel failed to argue that the independent source doctrine was not applicable to the facts in Hill's case. The issue was raised for the first time in

the Court of Appeals. Counsel should have argued that the historical record did not support application of the independent source doctrine.

Respondent acknowledges that Hill's petition is timely and properly exhausted, but moves to dismiss his claims as procedurally barred and/or without merit.

### III. Discussion

#### A. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged Strickland v. Washington test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and counsel is "permitted to set priorities, determine trial strategy, and press those

claims with the greatest chances of success." Id. at 689; United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014).[11] When reviewing a Strickland claim under the AEDPA, the court's review is "doubly" deferential. See Richter, 562 U.S. at 105.

For Strickland's first prong, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or common custom." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690).

For the second prong, a petitioner must demonstrate that, but for counsel's alleged error, there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

Further, the range of reasonable professional assistance is just as wide on direct appeal as it is at trial. In particular, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'" Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (quoting Jones v. Barnes, 463 U.S. 745, 752 (1983)). Indeed, requiring counsel to raise every claim, or even a multiplicity of claims, runs the risk of detracting from contentions that may be truly meritorious. Appellate counsel accordingly enjoys a "presumption that he decided which issues were most likely to afford relief on appeal," a presumption that a defendant can rebut "only when ignored issues are clearly stronger than

---

[11] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Gentry, 540 U.S. at 8.

those presented." Id. (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Lastly, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); see also Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996).

## B. Procedural Default

"A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default." Bennet v. Angelone, 92 F.3d 1336, 1343 (4th Cir. 1996) (citing Harris v. Reed, 489 U.S. 255, 263 (1989)). A procedural rule is adequate "if it is regularly or consistently applied by the state court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999) (quoting Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

Under Va. Code § 8.01-654(B)(2), a Virginia habeas petition must contain all allegations and facts that the petitioner knows about at the time of filing. In Hill's numerically second state habeas petition, the Supreme Court of Virginia ruled that Claims 1 through 5 and Claim 7 were defaulted under Va. Code § 8.01-654(B)(2). The Fourth Circuit has repeatedly held that § 8.01-654(B)(2) is an adequate and independent state law procedural ground constituting default. See Mackall v. Angelone, 131 F.3d 442, 445-46 (4th Cir. 1997) (Va. Code § 8.01-654(B)(2) is an adequate and independent bar.).

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." Bell v.

True, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. Murray v. Carrier, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. Id. at 495. "[T]he 'cause and prejudice' test is framed in the conjunctive, the absence of cause makes unnecessary an inquiry into prejudice." Davis v. Allsbrooks, 778 F.2d 168, 176 (4th Cir. 1985). Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to proffer a colorable claim of actual innocence. See Schlup v. Delo, 513 U.S. 298, 324-25 (1995).

Hill argues that his substantive claims are not procedurally defaulted because (1) the petition attacked the trial court's "void" sentencing order, (2) Hill was unaware of the facts underlying the defaulted claims until he received an August 20, 2015 letter from Respondent's counsel, and (3) the circuit court never warned Hill that his initial state habeas petition would have procedural consequences under Va. Code § 8.01-654(B)(2).

First, the sentencing order was not void. Officers investigated Hill in 2010, two years before the Supreme Court of the United States decided Jones. Regardless, the Court did not make Jones retroactive; therefore, Jones did not void Hill's convictions.

Second, Respondent's counsel has asserted that the August 20, 2015 letter "is a fabrication and forgery. The respondent's counsel did not draft, sign, or send this document to anyone." Mem. in Supp. of Mot. to Dismiss 12 n.8, ECF No. 14. Hill has not responded with proof that the letter is legitimate, and so I conclude that the letter cannot constitute new evidence to overcome Hill's default. Regardless, the facts underlying Hill's claims existed and were

11

discoverable upon a reasonably diligent investigation at trial: Hill was aware that officers from multiple jurisdictions had simultaneously investigated and that Botetourt officials placed a GPS unit on his vehicle without a warrant. See Vinson v. True, 436 F.3d 412, 417 (4th Cir. 2006) (quoting Basden v. Lee, 290 F.3d 602, 618 (4th Cir. 2002)) (holding that a petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation.'").

Third, Hill was not entitled to a warning regarding his initial state habeas petition. Hill mainly relies upon Dorr v. Clarke, 733 S.E.2d 235 (Va. 2012) and Castro v. United States, 540 U.S. 375 (2003); however, neither case is availing. In Dorr, the petitioner filed a writ of mandamus to compel the Virginia Department of Corrections to grant him credit for time spent incarcerated, but the circuit court recharacterized his writ of mandamus as a writ of habeas corpus. 733 S.E.2d 237-240. When the petitioner later attempted to file a habeas petition, the court ruled that claims that he had not raised in his recharacterized petition were procedurally defaulted. The Supreme Court of Virginia reversed, holding that when courts recharacterize pro se motions as habeas petitions, the court must warn the petitioner of the effects of that recharacterization: "[T]he very point of the warning is to help the pro se litigant understand not only (1) whether he should withdraw or amend his motion, but also (2) whether he should contest the recharacterization, say, on appeal." Id. at 242 (quoting Castro, 540 U.S. at 384) (internal quotation marks omitted, emphasis in original).[12]    Further, "an unwarned

---

[12] Similarly, in Castro, the district court recharacterized the petitioner's motion for a new trial pursuant to Rule 33 of the Federal Rules of Civil Procedure as both a Rule 33 motion *and* a 28 U.S.C. § 2255 writ of habeas corpus. Three years later, the petitioner attempted to file a § 2255 petition which included claims not raised in the 1994 motion; the district court dismissed the petition as successive. The Supreme Court of the United States held:

the district court must notify the pro se litigant that it intends to recharacterize the pleading, warn the litigant that this recharacterization means that any subsequent § 2255 motion will be subject to the restrictions on 'second or successive' motions, and provide the litigant an opportunity to withdraw the motion or to amend it so that it contains all the § 2255 claims he believes he has.

Castro, 540 U.S. at 383.

characterization cannot count as a [habeas petition] for purposes of the 'second or successive' provision [in Code 8.01-654(B)(2)], whether the pro se litigant does, or does not, take an appeal." 733 S.E.2d at 242. The Campbell County Circuit Court never recharacterized[13] Hill's initial state habeas petition; Dorr and Castro do not apply; and no warning was necessary.

Lastly, Hill never offers any other information regarding his failure to prevent default and he does not allege a colorable claim of actual innocence under *Schlup*. Therefore, Claims 1 through 5 and Claim 7 are procedurally defaulted under Va. Code § 8.01-654(B)(2) and are not entitled to federal habeas review on the merits.

Claims 1 through 4 and 6 through 7 are also procedurally barred under Stone v. Powell, 428 U.S. 465 (1976). In Stone, the Supreme Court of the United States held: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." Id. at 482. Further, federal district courts may not consider "a claim that evidence admitted at trial was the fruit of an illegal arrest . . . on a habeas corpus petition so long as the state courts had afforded a full and fair opportunity to litigate that claim." Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42 (3rd Cir. 1984); see also Cardwell v. Taylor, 461 U.S. 571, 572 (1983); Foltz v. Clarke, No. 3:13CV627, 2014 WL 4202482, 2014 U.S. Dist. LEXIS 117515, at *9-10 (E.D. Va., Aug. 22, 2014). In general, "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded *at trial* in the hope that the frequency of future violations will decrease." Stone, 428 U.S. at 492 (emphasis added). For habeas petitions,

---

[13] In November of 2012, Hill filed a handwritten writ of habeas corpus in the Campbell County Circuit Court, pursuant to Va. Code § 8.01-654. Presumably, he read the statute prior to filing the petition. Therefore, he knew that his petition must contain all allegations the facts of which were known to him at the time of filing.

"contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs."[14] Id. at 493.

When applying the procedural bar in Stone, a full and fair trial occurs even when "the proper constitutional case law to the facts, i.e., United States v. Jones, 565 U.S. [400] (2012) ha[s] not been decided." Foltz, 2014 U.S. Dist. LEXIS 117515, at *11. For example, "a change in the relevant precedent during the course of [petitioner's] litigation of the Fourth Amendment claims in state court does not render his opportunity to litigate the claims less than full and fair for purposes of Stone." Id. at *11-12; see also Boggs v. Bair, 892 F.2d 1193, 1199-1200 (4th Cir. 1989).

Hill was afforded a full and fair litigation on his Fourth Amendment issues in the state courts because the trial court held suppression hearings and the appellate courts reviewed Hill's search and seizure arguments. Therefore, Claims 1 through 4 and 6 through 7 are barred by Stone.

In Claims 2 through 4 and 6 through 7, Hill also alleged that his Fourteenth Amendment rights were violated; however, "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide." Graham v. Connor, 490 U.S. 386, 395 (1989). "[R]eliance on the Fourteenth Amendment as an alternative basis for his Fourth Amendment claim[s] does not permit [a petitioner] to avoid the Stone v. Powell rule." Mubita v. Wengler, No. 1:08-CV-0310-BLW, 2013 WL 5486878, 2013 U.S. Dist. LEXIS 142908, at *7 (Idaho Sept. 28, 2013).

---

[14] "[I]f applied indiscriminately[,] [the exclusionary rule] may well have the opposite effect of generating disrespect for the law and administration of justice." Id. at 491.

In Herrera v. Kelly, 667 F. Supp. 963 (E.D.N.Y. 1987), the petitioner tried to escape the Stone procedural bar by claiming that his due process rights were violated; the petitioner alleged that the state court judge who signed his search warrant was biased, and the judge's lack of neutrality was "so egregious as to rise to the level of a due process or equal protection violation," in addition to any Fourth Amendment violation.[15] Id. at 970. The district court in Herrera held:

> [The petitioner] had an opportunity to press his Fourth Amendment . . . arguments in state court. The state courts rejected those arguments, and [the petitioner] disagrees with their conclusion. But even strong disagreement with a state court's reading of the Fourth Amendment will not suffice to circumvent Stone. The gist of the matter is that [petitioner's] Fourth Amendment claim is just that: a Fourth Amendment claim. Attempts to find other names for that claim will not make it any more cognizable in the context of a federal habeas petition.

Id.

> In Hill's Franklin County habeas petition, I held the following:

> The gist of Hill's argument is that the state courts should have excluded evidence because investigating officers violated the Fourth Amendment; however, without evidence of egregious wrongdoing, such conduct is not a due process violation. Like the petitioner in Herrera, Hill's claims remain firmly grounded in the Fourth Amendment, and Hill cannot prove any grossly negligent, reckless, or intentional police misconduct. His reliance on "vehicle tampering" and jurisdictional issues in a multi-jurisdictional investigation does not constitute "a denial of fundamentally fair treatment . . . [or a] Fourth Amendment Violation . . . so egregious as to rise to the level of a due process violation." Id. at 970. The state courts afforded Hill a full and fair trial to pursue and litigate whichever issues he desired. Therefore, the rule in Stone still applies, and bars Hill from habeas relief on his Fourth and Fourteenth Amendment claims.

Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655, at *16-17. Hill's current petition is essentially identical to his Franklin County petition. Once again, he has not demonstrated that he is entitled to relief under the Fourteenth Amendment.

Therefore, all of Hill's substantive claims are barred from federal habeas review.

---

[15] The Supreme Court defines egregious conduct that would implicate the exclusionary rule as: "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring v. United States, 555 U.S. 135, 144 (2009).

### C. Merits

Regardless of any procedural bar, I will briefly address the merits of Hill's substantive claims. First, in Hill's Franklin County petition, I dismissed the underlying arguments of Claims 1 through 4 and Claim 7 as meritless. See Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655. Second, Claim 5 is without merit because the trial court allowed Hill to question Joel Branscom at a hearing, but found that Hill could not show that Branscom had relevant evidence. Hill v. Clarke, No. 151545, slip op. at 5-6 (Va. Jul. 1, 2016), ECF No. 14, Attach. 4 (Branscom only had a "limited recollection" of Hill's case.). Lastly, in Claim 6, Hill argues that Jones voided his convictions; however, officers investigated Hill in 2010, two years before the Supreme Court of the United States decided Jones, and the Court did not make Jones retroactive.

Hill's ineffective assistance claims are also without merit.

In Claim A, Hill alleges that appellate counsel was ineffective for failing to challenge the search on direct appeal based on the "reasonable expectation of privacy" test in Katz v. United States, 389 U.S. 347 (1967).[16] On habeas review, the Supreme Court of Virginia held that Claim A did not satisfy either prong of Strickland:

> The record, including the Court of Appeals' order denying petitioner's appeal and petitioner's petition for appeal to this Court, demonstrates counsel did argue to this Court that petitioner's reasonable expectation of privacy was violated and cited for support two of the three cases petitioner identifies . . . Any additional argument or authority regarding petitioner's expectation of privacy would not have shown error in the Court of Appeals' decision that, assuming petitioner was subject to an illegal search or seizure, any such constitutional violation did not warrant the suppression of evidence because officers had probable cause to arrest petitioner independent of the GPS information. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

---

[16] Katz is a two-prong test that determines what Fourth Amendment protection exists in a particular situation: (1) a person must have a subjective expectation of privacy and (2) that expectation must be objectively reasonable. 389 U.S. at 353. However, Fourth Amendment violations do not mandate evidence exclusion. See Davis v. United States, 564 U.S. 229, 239-40 (2011).

Hill v. Clarke, No. 151545, slip op. at 2. I agree with the state court's analysis.[17] Regardless, the Supreme Court of Virginia's adjudication was not contrary to, or an unreasonable application of, Strickland, and was not based on an unreasonable determination of the facts. Therefore, I grant the motion to dismiss as to Claim A.

In Claim B, Hill contends that appellate counsel failed to argue that law enforcement officials had violated his Fourteenth Amendment rights under the doctrine of fundamental fairness. On habeas review, the Supreme Court of Virginia held that Claim B did not satisfy either prong of Strickland:

> The record, including transcripts of the hearings held in relation to petitioner's motion to suppress, demonstrates officers began tracking petitioner with a GPS device on September 16, 2010. Days earlier, the Court of Appeals [of Virginia] had held such surveillance was constitutional without a warrant. See Foltz v. Commonwealth, 57 Va. App. 68, 77, 698 S.E.2d 281, 286 (2010) ("Neither the United States Supreme Court nor the Supreme Court of Virginia has addressed the issue of whether installing a tracking device directly on a car violates an expectation of privacy[.]"). Accordingly, counsel could have reasonably concluded the officers' actions were not so egregious as to warrant dismissal of petitioner's indictments and that such an argument would not have prevailed on appeal. See United States v. Hasan, 718 F.3d 338, 343-45 (4th Cir. 2013) (explaining the rare circumstances in which government conduct is outrageous or shocking enough to violate due process and bar prosecution).

Hill v. Clarke, No. 151545, slip op. at 3. I agree with the state court's analysis. Hill has not demonstrated that law enforcement's conduct was so outrageous as to justify evidence exclusion; therefore, I grant the motion to dismiss as to Claim B.[18]

---

[17] In Hill's related Franklin County case, I dismissed an identical claim: "[N]o Katz analysis was necessary; the Court [of Appeals of Virginia] simply 'assumed' that Botetourt County officers violated the Fourth Amendment. Instead, the Court of Appeals of Virginia focused on . . . evidence exclusion." Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655, at *6. In Hill's Campbell County direct appeal, the Court of Appeals of Virginia similarly found that "the trial court did not err in denying the motion to suppress because the Commonwealth had developed independent sources of evidence to establish probable cause for arrest." Hill v. Commonwealth, No. 1540-12-3, slip op. at 1.

[18] In Hill's Franklin County petition, I stated:
Hill has not alleged sufficient facts to support a claim of outrageous governmental conduct. During the investigation of Hill, law enforcement officers did not "manufacture[] evidence,"

In Claim C, Hill argues that appellate counsel was ineffective for failing to raise the "color of office" doctrine issue on appeal because police officers investigated outside their jurisdiction. On habeas review, the Supreme Court of Virginia held that Claim C failed to satisfy the performance prong of the Strickland test:

> The record, including the petitions for appeal to the Court of Appeals and to this Court and the Court of Appeals' order denying petitioner's appeal, demonstrates appellate counsel challenged the placement of the GPS device on petitioner's vehicle on numerous grounds, including that it violated the federal and Virginia constitutions, Virginia's criminal code, and [Va.] Code § 19.2-249. Counsel is presumed to have chosen effectively the issues for appeal, and petitioner has not asserted counsel's chosen claims were somehow weaker or less likely to prevail than an assertion of the "color of office" doctrine. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("Generally, only when ignored [appellate] issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.") (internal quotation marks omitted).

Hill v. Commonwealth, No. 1540-12-3, slip op. at 3-4. I agree with the state court's analysis. Hill has not shown that counsel's performance was deficient; therefore, I grant the motion to dismiss as to Claim C.[19]

In Claims D and G, Hill alleges that the Court of Appeals of Virginia illegally injected the independent source doctrine into his case and that the doctrine does not apply. On habeas

---

"approach apparently innocent people and provide them with a specific opportunity to engage in criminal conduct," or other highly illegal, clearly unconstitutional, conduct. Erwin, 520 Fed. App'x at 180; Osborne, 935 F.2d at 35. Therefore, Hill cannot prove deficient performance or prejudice in appellate counsel's failure to raise this meritless claim.
Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655, at *36-37.

[19] I addressed the same argument in Hill's related Franklin County § 2254:
[T]he "under color of office" doctrine [] "prohibits a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable to gather." State v. Gustke, 516 S.E.2d 283, 292 (W.V. 1999) (Virginia recognized the doctrine in Hudson v. Commonwealth, 585 S.E.2d 583, 586 (Va. 2003).). When officers attached the GPS device to Hill's vehicle, they never revealed themselves, never used "indicia of [their] position," and never "unlawfully assert[ed] official authority to gather evidence." Gustke, 516 S.E.2d at 292; State v. Phoenix, 428 So.2d 262, 266 (Fla. Dist. Ct. App. 1982). Botetourt County deputies went to Hill's residence and attached the GPS device at night. Therefore[,] the "under color of office" doctrine does not apply.
Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655, at *25. Further, "[e]ven if the "under color of office" doctrine did apply, the evidence would still not be excluded under the independent source doctrine and the good faith exception. Id. at *25 n.17.

review, the Supreme Court of Virginia concluded that Claims D and G failed to satisfy the prejudice prong of the Strickland test:

> First, the Court of Appeals was permitted to affirm the trial court's ruling on any ground apparent in the record. See Perry v. Commonwealth, 280 Va. 572, 581-82, 701 S.E.2d 431, 437 (2010) (explaining this Court may affirm a lower court judgment for any reason sufficiently supported by the record). Additionally, the record, including the trial transcripts and the transcripts from hearings regarding petitioner's several motions to suppress, demonstrates the trial court denied those motions in part on the determination the exclusionary rule should not apply because officers acted in good faith reliance on then binding Court of Appeals' precedent approving the warrantless use of GPS tracking. See Davis v. United States, 131 S. Ct. 2419, 2432 (2011) (holding "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule"). Although appellate counsel argued on appeal to this Court that the officers' actions were not excused by any exception to the warrant requirement, including their good faith reliance on appellate authority, petitioner has not claimed here that this Court might have agreed with counsel's assertion or that counsel might have better argued the point. Accordingly, regardless of any error in the Court of Appeals' application of the independent source doctrine, petitioner has failed to establish this Court might have granted his petition for appeal because the trial court's application of Davis was an independent and adequate basis supporting its denial of suppression. Cf. Ferguson v. Stokes, 287 Va. 446, 452, 756 S.E.2d 455, 458 (2014) (error in the judgment of a lower court will not be considered on appeal where a "separate and independent basis for the judgment" remains unchallenged).

Hill v. Commonwealth, No. 1540-12-3, slip op. at 4-5. I agree with the state court's analysis.[20] Hill has failed to demonstrate that, if not for appellate counsel's actions, the outcome of the proceeding would have been different. Therefore, I grant the motion to dismiss as to Claims D and G.

---

[20] Moreover, in Hill's Franklin County petition, I concluded:

[A]uthorities had already pinpointed Hill as the prime suspect by September 10, 2010. At the point Botetourt officers attached a GPS to his car in Bedford County, multiple jurisdictions had already amassed a great deal of untainted evidence against Hill. Also, officers did not solely utilize GPS evidence for probable cause . . . in fact, regardless of any additional GPS evidence, the investigation centered on Hill because the burglary followed his highly specific *modus operandi*. Officers went to Hill's home, viewed the suspicious bedding in his car, and then multiple jurisdictions cooperated to properly arrest him. Hill fail[s] to prove that appellate counsel was deficient or that he was prejudiced by appellate counsel's failure to argue that the independent source doctrine was inapplicable.

Hill v. Clarke, No. 7:15CV00201, 2016 U.S. Dist. LEXIS 165655, at *37-38.

In Claim E, Hill contends that appellate counsel was ineffective for failing to challenge the trial court's ruling which prevented him from subpoenaing the Botetourt Commonwealth's Attorney to testify about the decision to use the GPS device, violating his constitutional right to present evidence at his trial. On habeas review, the Supreme Court of Virginia held that Claim E did not satisfy either Strickland prong:

> The record, including a transcript of a January 4, 2012 hearing regarding several of petitioner's motions, demonstrates the trial court eventually permitted petitioner to question Branscom regarding his advising officers on using the GPS to track petitioner and that Branscom had only a limited recollection of discussing the issue with officers. Petitioner does not identify any issue relevant to suppression on which he was unable to question Branscom.
>
> At the same hearing, the trial court quashed petitioner's subpoena requesting Branscom's presence for trial after petitioner could not proffer what relevant evidence Branscom would provide given that the suppression issue was settled. Here, too, petitioner has not alleged any relevant testimony Branscom might have supplied at petitioner's trial. Accordingly, petitioner has not shown the trial court abused its discretion or violated his constitutional rights in a manner that might have amounted to reversible error.

Hill v. Commonwealth, No. 1540-12-3, slip op. at 5-6. I agree with the state court's analysis. Since Hill has not shown that the quashing of his subpoena violated his constitutional rights, counsel could not have been ineffective for failing to raise a meritless claim. See Moore, 934 F. Supp. at 731. Therefore, I grant the motion to dismiss as to Claim E.

Lastly, in Claim F, Hill alleges that appellate counsel was ineffective for failing to argue that the admission of the GPS was not harmless error because the other, non-GPS evidence against him was weak. On habeas review, the Supreme Court of Virginia concluded that Claim F did not satisfy either prong of Strickland:

> Only if an appellate court had held the trial court erred in refusing to apply the exclusionary rule in petitioner's case would it have then considered whether the Commonwealth could prove any erroneous admission of evidence was harmless beyond a reasonable doubt. See Deck v. Missouri, 544 U.S. 622, 635 (2005) (the state bears the burden of proving constitutional error is harmless beyond a reasonable doubt). Accordingly, counsel could have reasonably deemed it

prudent to focus on establishing the exclusionary rule was applicable to petitioner's case. Additionally, because the Court of Appeals held the exclusionary rule should not apply in petitioner's case, it did not need to reach the question of harmless error.

Hill v. Commonwealth, No. 1540-12-3, slip op. at 6. I agree with the state court's analysis. Unless the appellate court agreed that the exclusionary rule applied in Hill's case, the harmless error test was inapplicable to the admission of the GPS evidence. Therefore, I grant the motion to dismiss as to Claim F.

## IV.

For the foregoing reasons, I grant Respondent's motion to dismiss, and dismiss the petition for a writ of habeas corpus. Based upon my finding that Hill has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

**ENTER:** This ⁹ᵗʰ day of October, 2017.

Senior United States District Judge